IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LESLIE R. KIRKPATRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-04-1642-C |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. Leslie R. Kirkpatrick, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits and supplemental security income benefits. United States District Judge Robin Cauthron has referred this matter for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.     The Administrative Decision**

In his applications for disability benefits, Plaintiff alleged that he was disabled because of neck pain from a broken neck and three neck surgeries, degenerative disc disease, low back surgery, coronary artery disease, infection and blood clots. AR 108, 115.

The Administrative Law Judge (ALJ) issued his decision on April 3, 2004, finding that Plaintiff is not disabled. AR 21-30. Following the five-step sequential evaluation process, *see Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. AR 23, 28. At step two, the ALJ determined that Plaintiff's three neck surgeries, degenerative disc disease, disc removal from his lower back, coronary artery disease, high blood pressure, depression and diabetes, constitute impairments that are "severe" within the meaning of the Social Security regulations. AR 24, 29. At step three, the ALJ determined Plaintiff's impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, subpt. P, app. 1. AR 24, 29.

The ALJ next determined that Plaintiff has the residual functional capacity (RFC) to perform a significant range of light work.[1] AR 26-27, 29. The ALJ determined, however, that Plaintiff cannot perform his past relevant work. AR 27, 29. Relying on the testimony of a vocational expert (VE), the ALJ determined that Plaintiff is able to make a vocational adjustment to other work and that Plaintiff can perform jobs such as taxi cab coordinator, small parts assembly and storage rental clerk. The ALJ determined that these jobs exist in

---

[1] "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Plaintiff testified, "I can't lift but about 10 pounds." AR 592. When asked the heaviest amount of weight he could lift, Plaintiff replied "probably about 20 pounds." AR 596. In his application for benefits, Plaintiff wrote, "I can't [sic] do very little lifting or standing." AR 108. A physical RFC assessment submitted by Dr. Lise Mungul states that Plaintiff is limited to lifting 10 pounds occasionally and 5-8 pounds frequently. AR 349. Dr. Mungul's RFC assessment does not, therefore, support the ALJ's RFC finding. Apparently the ALJ relied upon Plaintiff's testimony in determining Plaintiff's physical RFC.

significant numbers in the regional and national economy. AR 28, 29. Therefore, the ALJ determined that Plaintiff is not disabled.

Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied his request for review, AR 9-12, making the ALJ's decision the final decision of the Commissioner.

## II.     Issues Presented for Judicial Review

Plaintiff challenges the ALJ's determination of Plaintiff's RFC. Plaintiff contends that the ALJ erred as a matter of law by failing to take into account the effects his obesity and mental impairment have on his RFC.

## III.    Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in

weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.   Analysis**

Plaintiff first contends that the ALJ erred in failing to consider the effects of his obesity on his residual functional capacity. *See* Plaintiff's Opening Brief at 3-5.

According to the Social Security Administration, a claimant's obesity could affect findings at every step of the sequential evaluation process: whether an impairment is medically determinable, whether it is severe, whether it meets or equals a listing, and whether it prevents past relevant work or other work that exists in significant numbers in the national economy. *See* Social Security Ruling 02-01p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 at 3 (Sept. 12, 2002). While obesity alone may not be severe, the impact from its combination "with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at 1. The regulations specifically require the ALJ to consider the effects of obesity at steps three and four when, as in this case, the obesity is combined with other impairments of the musculoskeletal system. Section 1.00(Q) of the Listing of Impairments provides:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of

the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. pt. 404, subpt. P, app. 1.  Further, the Social Security Administration specifically notes that in determining RFC at step four, an assessment of obesity and the effect it has on the individual's ability to perform in a work environment is required.  For instance, the ability to sustain work activity over time must be evaluated:  "In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.  This may be particularly true in cases involving sleep apnea . . . .  As with any other impairment, we will explain how we reached our conclusion on whether obesity caused any physical or mental limitations."  SSR 02-01p at 6-7.

The Social Security Administration defines "obesity" as a body mass of 30.0 or above.  *See id.* at 2.  Plaintiff is five feet, seven inches tall and weighs approximately 252 pounds.  AR 338.  His body mass is calculated at 39.5.  AR 557.[2]  Further, in this case, obesity and sleep apnea were specifically identified as impairments in Plaintiff's Physical Residual Functional Capacity Assessment prepared by Dr. Lise Mungul, a consulting physician.  AR 348.  *See also* discussion *supra* at n.1.  This medical evidence indicates that Plaintiff suffers from obesity, a medically determinable impairment.  *See* SSR 02-01p, 2000 WL 628049 at 3 (diagnosis of obesity by a treating physician or medical records indicating consistently high

---

[2]At the hearing before the ALJ, Plaintiff reported his weight as 270 pounds.  AR 578.  Medical records indicate that Plaintiff's weight fluctuates, but it has been consistently high enough to constitute a body mass over 30.0.

body weight is sufficient to establish the existence of obesity as a medically determinable impairment). As a result, the ALJ should have evaluated the impact of Plaintiff's obesity throughout the disability determination process.

Not only did the ALJ fail to discuss the effect of Plaintiff's obesity on his other impairments, the ALJ also suggested that Plaintiff should be denied benefits based partially on a physician's statement that "it would help him if he were to lose weight" and the fact that Plaintiff had not lost weight. *See* AR 26. In fact, however, the physician's statement is further evidence that the ALJ should have considered the effects of Plaintiff's obesity on his other impairments.[3] In this case, the ALJ's failure to discuss the effects of Plaintiff's obesity constitutes reversible error under the Social Security Administration's rulings and regulations.[4]

Plaintiff also claims that the ALJ committed reversible error when he failed to determine Plaintiff's mental RFC by conducting a function by function assessment of Plaintiff's ability to work. Plaintiff is correct.

---

[3]Dr. Mungul's statement, in pertinent part, says: "needs weight loss and routine exercise to recover cardiac function -- should also improve sleep apnea." AR 350.

[4]The Third and Seventh Circuit Courts of Appeal have held that an ALJ's failure to explicitly address a claimant's obesity does not necessarily warrant remand. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (where ALJ adopted the limitations suggested by specialists and reviewing doctors who were aware of claimant's obesity, the effect of obesity was factored indirectly into the ALJ's decision as part of the doctors' opinions). In this case, however, the ALJ did not adopt the physical RFC findings of Dr. Mungul, who had specifically identified Plaintiff's obesity as an impairment. *See* discussion *supra* at n. 1.

At step two of the sequential evaluation process, the ALJ found that Plaintiff suffered from severe impairments, including depression. AR 29. According to the regulations, an impairment is not severe unless it "significantly limit[s] an individual's physical or mental ability to do basic work activities," *See* 20 C.F.R. § 404.1521. In assessing the severity of Plaintiff's mental impairment at steps two and three, the ALJ relied upon the Psychiatric Review Technique form completed by a consulting physician. Based on that evidence, the ALJ made findings as to the degree Plaintiff's depression has resulted in limitations on activities of daily living, social functioning, and concentration, persistence and pace. He found Plaintiff's functional limitations in these general areas to be "mild," and he found no evidence of repeated episodes of decompensation. AR 25. According to the regulations, ratings of "mild" in the first three categories and "none" in the fourth category generally indicate that a claimant's mental impairment is not severe *unless* the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities, such as understanding, carrying out and remembering instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1520a(d)(1) and 404.1521(b). In finding Plaintiff's mental impairment "severe" despite the "mild" findings in the PRTF, the ALJ must have implicitly found that other evidence indicated Plaintiff had more than a minimal limitation in his ability to do basic work activities.

The record in this case, however, is devoid of any indication that the ALJ went on to make the required assessment of mental limitations on the basic work activities identified in

20 C.F.R. § 404.1521(b). The ALJ does cite to findings and observations from medical sources regarding Plaintiff's mental impairment (AR 24-25), including a diagnosis of "major depressive disorder, recurrent severe" and a GAF score of 50.[5] But he fails to discuss or make findings as to Plaintiff's mental limitations as they relate to his ability to perform work-related tasks, and no mental RFC assessment (documenting a function by function assessment of limitations on basic work activities) is included in the record. In light of the ALJ's finding that Plaintiff suffered from a severe medically determinable mental impairment, the ALJ's failure to make an assessment of work-related mental limitations is legal error. *See* SSR 85-16, Residual Functional Capacity for Mental Impairments ("[A]ll limits on work-related activities resulting from the mental impairment must be described in the mental RFC. It is the responsibility of the . . . ALJ . . . to make findings as to the individual's ability to perform work-related activities (RFC).").

The ALJ's failure to make an assessment of work-related mental limitations in determining Plaintiff's RFC, as well as the ALJ's failure to consider the effects of Plaintiff's obesity on Plaintiff's RFC, constitute legal errors which require reversal and remand for further proceedings.

---

[5]Global Assessment of Functioning (GAF) is a 100-point tool rating overall psychological, social and occupational functioning of people 18 years of age and older. A score of 50 on the GAF scale indicates "serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, 4th ed. at 32.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by October 20th, 2005. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 30th day of September, 2005.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE